IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02080-PAB-KLM

DARRELL D. HARRIS, also known as Darrell Duane Harris,

      Plaintiff,

v.

T. BRADY, Officer, in his individual capacity,
THE CITY OF AURORA,
JOHN MORELAND, in his individual capacity, and
NICHOLAS METZ, in his individual capacity,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant City of Aurora's **Motion to Dismiss Plaintiff's Fourth Amended Complaint [ECF 27] [#38]**[1] ("Aurora's Motion") and on Defendant Travis Brady's ("Brady") **Motion to Dismiss Plaintiff's Fourth Amended Complaint [#39]** ("Brady's Motion") (collectively, the "Motions").   Plaintiff, who proceeds as pro se litigant,[2] filed a joint Response [#55] to both Motions [#38, #39], and Defendant

_____

[1] [#38] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).   This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of pro se litigant.   *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).   In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."   *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (*citing Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).   In addition, a pro se litigant must follow the same procedural rules that govern other litigants.   *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

City of Aurora and Defendant Brady filed a joint Reply [#56].   Pursuant to 28 U.S.C. §
636(b)(1)(A) and D.C.COLO.LCivR 72.1(c), the Motions [#38, #39] have been referred to
the undersigned for a recommendation regarding disposition.   *See* [#47].   The Court has
reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised
in the premises.   For the reasons set forth below, the Court **RECOMMENDS** that the
Motions [#38, #39] be **GRANTED**.

## I.  Background

According to the Fourth Amended Complaint [#27],[3] on August 1,[4] at nine o'clock
in the evening, Plaintiff "was pulled over by 2 Aurora Police units and the swat team in a
Uhaul truck that was currently rented for work being conducted."   *Fourth Am. Compl.*
[#27] ¶¶ 8, 14.   Plaintiff was asked to get out of the vehicle with his hands up, which he
did "as well as gesturing to the top of the crown with both hands up . . . as the officer
stated he did not give a shit."   *Id.* ¶ 9.   As Plaintiff "got closer to the officers doing the
instructing [he] was slammed to the ground . . . forcefully by 4 officers and demanding to
stop resisting in which [Plaintiff] was not doing so in any manner whatsoever!!!!!!"   *Id.*
As the officers were placing cuffs on him, one pulled out a taser and "hit" Plaintiff in the
lower back with it.   *Id.*   "As the cuffs were placed 3 officers decided to wipe up [Plaintiff]

---

[3] All well-pled facts from the Fourth Amended Complaint [#27] are accepted as true and
viewed in the light most favorable to Plaintiff as the nonmovant.   *See Barnes v. Harris*, 783 F.3d
1185, 1191-92 (10th Cir. 2015).

[4] Plaintiff's first mention of the date does not include a year, and the second mention of
the date states "2021."   *Fourth Am. Compl.* [#27] ¶¶ 8, 14.   However, given that this lawsuit was
filed on July 30, 2021, the actual date of the incident must necessarily be earlier than August 1,
2021.   *Compl.* [#1].

on the ground as well as put their knees to [Plaintiff's] calves neck and back." *Id.* ¶ 10.

Plaintiff states that he "was losing breath fast and only had a few remaining . . . then

yelling out to them I AM a Mason . . . what are you doing???   You are going to kill me???"

*Id.*   The officers "stopped what they were doing and stated to breathe and relax."   *Id.*

Plaintiff states:

> The claimant just knew the Maji* word I am a Mason which stopped the
> agents long enough to catch breath in.   However the crystal that was
> knocked out of the claimants sock was connected to ancient Atlantis that
> the officers went running from.   This means that the attack was recorded
> on a crystal device and the attack was viewed by the whole meta verse.
> The claimant did not see this attack coming however had the where with all
> to place a crystal on the vessel before the attack.   This is why he is SO
> LOVED in the higher realms of existence.

*Id.* ¶ 36.   Plaintiff "was put in an ambulance . . . shot up with ketamine as well as other

drugs; place in a helicopter and sent to a hospital across town . . . where [he] lost 8 days

and was made to take lithium to get out of the hospital . . . FOR NO REASON."   *Id.*   The

four charges initially brought against Plaintiff, including for stealing a rental truck, were all

subsequently dropped.   *Id.* ¶¶ 15, 23.

Plaintiff brought this § 1983 action contending that the following constitutional

rights have been violated: (1) unreasonable search and seizure; (2) excessive force; and

(3) due process.   *Id.* ¶¶ 51-70.   He also asserts claims under Colorado state law.   *Id.*

¶¶ 71-78.   He seeks compensatory and punitive damages as well as injunctive relief in

the form of an order that Defendants "correct the misrepresentations complained of as it

pertains to the recording of the incident in the instant on record."   *Id.* at 15.   In the

present Motions [#38, #39], Defendants Brady and City of Aurora contend that Plaintiff's

claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6).

## II.   Standard of Review

### A.   Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.   Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.   *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).   Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.   *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).   "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."   *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.   *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).   When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true.   *Id.*   By contrast, with a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends.   *Id.* at 1003.   When reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations."   *Id.* at 1003.   The Court therefore must make its own findings of fact. *Id.*   In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

–4–

**B.      Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."   *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted.").   "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."   *Sutton v. Utah State Sch. for the Deaf & Blind,* 17 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).   To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"   *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.   Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."   *Id.* (brackets in original; internal quotation marks omitted).

–5–

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.4d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown[n][ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).   *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.   Analysis

### A.   Federal Claims

Plaintiff brought this § 1983 action contending that the following constitutional rights have been violated: (1) unreasonable search and seizure; (2) excessive force; and (3) due process.   *Fourth Am. Comp.* [#27] ¶¶ 51-70.   The first two claims appear to fall under the Fourth Amendment and the third claim under the Fourteenth Amendment.

In short, "[t]he Fourth Amendment guarantees a person's right to be free from 'unreasonable searches and seizures.'"   *United States v. Frazier*, 30 F.4th 1165, 1172 (10th Cir. 2022) (quoting U.S. Const. amend. IV.   In full, this amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."   U.S. Const. amend. IV.   In analyzing the constitutionality of officer action, "the touchstone of [the court's] analysis under the Fourth Amendment is always the reasonableness in all the

–6–

circumstances of the particular governmental invasion of a citizen's personal security." *United States v. Windom*, 863 F.3d 1322, 1327 (10th Cir. 2017) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).

Regarding search and seizure, the Fourth Amendment allows a warrantless arrest if an officer has "probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1191 (10th Cir. 2007) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)). The determination as to whether probable cause exists is based on the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Courts assess probable cause "from the standpoint of an objectively reasonable police officer." *Donahue v. Wihongi*, 948 F.3d 1177, 1189 (10th Cir. 2020) (quoting *Ornelas v. United States*, 517 U.S. 690, 691 (1996)). When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff[,]" even if the officer "reasonably but mistakenly conclude[s] that probable cause is present." *Romero*, 45 F.3d at 1476. The probable cause analysis concerns what the officer knew at the time of the arrest, not later-acquired evidence. *Cortez v. McCaulty*, 478 F.3d 1108, 1116 (10th Cir. 2007).

Regarding excessive force, "[d]etermining whether the force used to effect a

particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."   *Graham v. Connor*, 490 U.S. 386, 396 (1989).   The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."   *Id.*   The proper application of the Fourth Amendment "requires careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."   *Id.*   "The court must look to the 'reasonableness' of the use of force, judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."   *Id.* Where the underlying crime is a misdemeanor, courts have held that "an officer should use minimal force to effect an arrest."   *Surat v. Klamser*, No. 19-cv-00901-WJM-NRN, 2021 WL 2935948, at *4 (D. Colo. July 13, 2021) (citing cases) (reversed on other grounds).

Regarding due process, "[t]he Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'"   *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. amend. XIV).   Procedural due process protects the individual against "arbitrary action of government."   *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).   The Tenth Circuit has outlined "a two-step inquiry [in determining whether an individual's procedural-due-process rights were violated]: (1) Did the individual possess a protected property [or

–8–

liberty] interest to which due process protection was applicable?   (2) Was the individual afforded an appropriate level of process?"   *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006) (quoting *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999)) (internal quotation marks omitted; alterations in original).   Under the Due Process Clause, there is no right to procedure in and of itself.   *See Olim v. Wakinekona*, 461 U.S. 238, 250 & n.12 (1983); *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012). The "constitutional purpose [of due process] is to protect a substantive interest to which the individual has a legitimate claim of entitlement."   *Olim*, 461 U.S. at 250 (citation omitted).   "To be protected by procedural due process, an interest must be guaranteed by state law when specified substantive predicates exist."   *Elliott*, 675 F.3d at 1245 (emphasis added; original emphasis omitted).

### 1.   Defendant Brady

Plaintiff's Fourth Amended Complaint [#27] does not plead specific facts that would allow the Court to determine that Defendant Brady is directly responsible for any of the asserted constitutional violations.   *See Iqbal*, 556 U.S. at 677.   The only specific allegation against Defendant Brady is as follows: "The name of the main officer was T. Brady given on the bottom of the ticket."   *Fourth Am. Compl.* [#27] at 3.   Plaintiff does not allege any other specific action that Defendant Brady took which may have resulted in the violation of Plaintiff's constitutional rights or caused Plaintiff's alleged damages.   In short, there are no specific facts to allow the Court to understand what exactly Plaintiff is asserting that Defendant Brady did beyond signing his name at the bottom of the ticket.

"To state a claim in federal court, a complaint must explain what each defendant

did [to the plaintiff]; when the defendant did it; how the defendant's actions harmed [the plaintiff], and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Because Plaintiff's allegations are perfunctory and devoid of necessary factual enhancement as to Defendant Brady, the Court concludes that Plaintiff fails to meet the standard set forth in Rule 12(b)(6) to adequately allege that Defendant Brady violated Plaintiff's Fourth or Fourteenth Amendment rights.   *Twombly*, 550 U.S. at 565 n.10.

Plaintiff makes a number of allegations against "Defendants" collectively, without identifying which Defendant took which action.   In *Bark v. Chacon*, 504 F. App'x 741, 745 (10th Cir. 2012), the Tenth Circuit Court of Appeals stated that, in an arrest situation where there are multiple officers present, a plaintiff "in a § 1983 case has the burden" to "individually identify what each officer did"; "mere presence at the scene" is insufficient. Quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir.2008), the *Bark* court noted that, "when a § 1983 plaintiff includes a 'government agency and a number of government actors sued in their individual capacities,' then 'it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.'"   "When a plaintiff instead uses 'either the collective term "Defendants" or a list of defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.'"   *Bark*, 504 F. App'x at 745 (quoting *Robbins*, 519 F.3d at 1250).

Here, other than signing his name at the bottom of the ticket issued to Plaintiff, there is no indication of what actions generally attributed to "Defendants" may have been performed by Defendant Brady.   As Defendant Brady argues, "regardless of what right Plaintiff is asserting as protected, the mere placing of a name on a ticket, by itself, does not support" a due process violation, excessive force, or an unconstitutional search and seizure claim.   *Motion* [#39] at 6.

Accordingly, the Court **recommends** that Plaintiff's claims against Defendant Brady be dismissed **without prejudice**.   *See, e.g.*, *Crump v. James Irwin Charter Sch.*, No. 12-cv-00008-PAB-KLM, 2012 WL 1247186, at *3-4 (D. Colo. Mar. 21, 2012) (allowing dismissal of claims pursuant to Rule 12(b)(6) without prejudice).

### 2.     Defendant City of Aurora

"[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."   *Monell v. Dep't of Sec. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).   For a plaintiff to state a cognizable *Monell* claim, he must show the existence of a municipal custom or policy and a direct causal link between the custom or policy and the violation alleged.   *Myers v. Okla. City Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998).   An official "policy or custom" may be proven by the existence of a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, failure to train or supervise, or ratification by the final policymaker of the decisions of subordinates to whom authority was delegated subject to the policymaker's review and approval.   *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010).   Causation is established if the plaintiff shows that

"the municipality was the 'moving force behind the injury alleged.'"   *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citations omitted).

The precise basis of Plaintiff's claims against the City of Aurora is unclear from the allegations in the Fourth Amended Complaint [#27].   To the extent he *may* be asserting that municipal liability is based on the failure to adequately train, supervise, or discipline employees, liability is possible only "'if that failure results from deliberate indifference to the injuries that may be caused.'"   *Diallo v. Milligan*, No. 18-CV-02898-REB-KLM, 2019 WL 3302166, at *11 (D. Colo. July 23, 2019) (citing *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)).   This standard is met if a "municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm."   *Id.*   A plaintiff "may establish a municipality's constructive notice by demonstrating . . . a pattern of tortious conduct," which Plaintiff has not alleged here.   *Id.* at *12.

To the extent that Plaintiff *may* be asserting municipal liability based on an informal custom, the custom must "amount[ ] to a widespread practice that, although not authorized by written laws or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law."   *Brammer-Hoelter*, 602 F.3d at 1189.   A plaintiff may establish the "existence of such a continuing, persistent and widespread custom" by offering "evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way."   *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).   Plaintiff has not provided such allegations here.

–12–

Early in this lawsuit, before Plaintiff filed his first Amended Complaint [#12], he was given thorough instruction from the Court regarding the requirements of stating a claim against his named municipality, the City of Aurora.   *Order* [#7] at 3-4.   However, despite these clear instructions, Plaintiff has failed to provide any allegations regarding a policy or custom by which the City of Aurora could be held liable.   *See Fourth Am. Compl.* [#27]. Rather, at most, Plaintiff appears to attempt to allege that the City of Aurora is liable under a theory of respondeat superior, given his statement: "All agents must answer of [sic] PAY UP!   As well as the City of Aurora who employed such persons and will be held accountable."   *Id.* ¶ 46.   However, municipalities may not be held liable for the unconstitutional actions of their employees under a theory of respondeat superior.   *Board of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).   Because Plaintiff provides no allegations regarding any unconstitutional policy or custom established by the City of Aurora which was the moving force behind any purported alleged unconstitutional violation, the Court finds that the constitutional claims against the City of Aurora should be dismissed.   The Court further finds, given that Plaintiff was previously given clear instruction regarding the types of allegations which would be required to state a claim against the City of Aurora, that he still failed to do so, and that there is no indication, were he provided another chance at stating these claims, that he would be able to do so, his claims against the City of Aurora should be dismissed with prejudice.

Accordingly, the Court **recommends** that the City of Aurora's Motion [#38] be **granted** to the extent that Plaintiff's constitutional claims asserted against the City of Aurora be **dismissed with prejudice**.   *Reynoldson   v. Shillinger*, 907 F.2d 124, 126

(10th Cir. 1990) (discussing when it is appropriate to dismiss a pro se litigant's claims with prejudice versus without prejudice).

**B.    State Law Claims**

In addition to his constitutional claims under § 1983, Plaintiff brings a Colorado state law claim for gross negligence and, possibly, a separate claim for outrageous conduct.   *Fourth Am. Compl.* [#27] ¶¶ 71-78.

28 U.S.C. § 1367(a) states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

State and federal claims form part of the same case or controversy if they "derive from a common nucleus of operative fact."   *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).   However, pursuant to 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."

Plaintiff brings this action in federal court pursuant to 28 U.S.C. § 1331, given that the case arises under the Constitution and statutory laws of the United States, specifically 42 U.S.C. § 1983.   *Fourth Am. Compl.* [#27] ¶¶ 1, 4.   He does not allege that the Court has diversity jurisdiction over the case under § 1332.   *See id.* ¶¶ 6-7.   Thus, in addition to the original jurisdiction the Court has over Plaintiff's constitutional claims, the Court has supplemental jurisdiction over Plaintiff's state law claims under § 1367.   *See United Mine Workers of Am.*, 383 U.S at 725; 28 U.S.C. § 1367.

However, "[i]f federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'" *Bauchman for Bauchman v. West High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The Court found above that Plaintiff has failed to state any claim under § 1983 and that, therefore, his federal claims should be dismissed.   Therefore, the Court further finds that the exercise of supplemental jurisdiction over Plaintiff's state law claims should be declined.

Accordingly, the Court **recommends** that the Motions [#38, #39] be **granted** to the extent that Plaintiff's state law claim(s) be **dismissed without prejudice** for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).   *See Bauchman*, 132 F.3d at 549.

## IV.   Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motions [#38, #39] be **GRANTED** and that Plaintiff's claims against Defendants Brady and City of Aurora be **DISMISSED** as outlined above.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.   72(b); *Thomas v.*

–15–

*Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED: December 27, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

–16–